UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :
RALPH HERRERA,                                :
                                              :
                    Plaintiff                 :
                                              :          07 CV 8426 (JSR)
          -against-                           :
                                              :
KATZ COMMUNICATIONS,                          :
                                              :
                    Defendant.                :
                                              :
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND COMPEL ARBITRATION

Plaintiff Ralph Herrera, by and through its undersigned attorneys, respectfully submits this Memorandum of Law in Opposition to Defendant Katz Communication's Motion to Dismiss Plaintiff Ralph Herrera's complaint and compel arbitration.

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS............................................................................. i

TABLE OF AUTHORITIES........................................................................ ii

STATEMENT OF FACTS......................................................................... 1

INTRODUCTION................................................................................... 4

ARGUMENT........................................................................................ 4

    POINT I:    THE ARBITRATION AGREEMENT IS NULL AND VOID....... 4

        A.    THE PRIOR ARBITRATION AGREEMENT IS
            EXPLICITLY SUPERSEDED BY THE SUBSEQUENT
            EMPLOYMENT CONTRACT.................................... 4

        B.    DEFENDANT IS NOT A PARTY TO THE PRIOR
            ARBITRATION AGREEMENT................................. 7

    POINT II:    THE ARBITRATION PROVISION OF THE SUBSEQUENT
            EMPLOYMENT CONTRACT IS CLEAR AND
            UNAMBIGUOUS IN ITS WAIVER OF A PREVAILING
            PLAINTIFF'S ENTITLEMENT TO ATTORNEYS' FEES......... 8

    POINT III:    THE ENTIRE ARBITRATION PROVISION OF THE
            EMPLOYMENT CONRACT IS UNENFORCABLE AS
            AGAINST PUBLIC POLICY AS IT DEPRIVES
            PLAINTIFF OF SUBSTANTIVE LEGAL REMEDIES............. 11

    POINT IV:    THE ARBITRATION PROVISION CANNOT BE
            REDRAFTED AS IT WOULD VIOLATE THE EXPLICIT
            TERMS OF THE EMPLOYMENT CONTRACT................    19

CONCLUSION....................................................................................... 21

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

**PAGE**

Allied-Bruce Terminix Companies, Inc. v. Dobson
513 U.S. 265, 115 S.Ct. 834 (2001)...................................................... 17

DeGaetano v. Smith Barney, Inc
983 F.Supp. 459 (S.D.N.Y. 1997)..........................................9, 11, 12, 13, 14, 16, 18

E.E.O.C. v. Waffle House
534 U.S. 279 (2002)...................................................................... 19

Gambardella v. Pentec, Inc.
218 F.Supp 2d 237 (D.Conn. 2002)......................................................11

Gambardella v. Pentec, Inc.
2003 WL 22119182 (D.Conn. 2003).................................................... 12

Graham Oil Co. v. Arco Products Co.
43 F.3d 1244 (9th Cir. 1994)...........................................................9, 12

Gruber v. Louis Hornick & Co., Inc.
2003 WL 21222541 (S.D.N.Y. 2003)....................................................  11

Hooters v. Phillips
39 F.Supp.2d 582 (D.S.C. 1998)..................................................... 12, 19

Independent Energy Corp. v. Trigen Energy Corp.
944 F.Supp. 1184 (S.D.N.Y. 1996)......................................................6

McCaskill v. SCI Management Corp.
285 F.3d 623 (7th Cir. 2002)........................................................10, 12

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth
473 U.S. 614 (1985)....................................................................  11

Paladino v. Avnet Computer Technologies, Inc.
134 F.3d 1054 (11th Cir. 1998)....................................................... 12

Perez v. Globe Airport Security Services
253 F.3d 1280 (11th Cir. 2001)......................................................12, 18

Popovich v. McDonald's Corporation
189 F.Supp. 2d 772 (N.D.Ill. 2002)............................................................... 12

Travelers Indem. Co. v. 28 E. 70th St. Constr. Co.
296 F.Supp.2d 476 (S.D.N.Y. 2003).............................................................. 20

## STATE CASES

Anthony v. Syracuse Univ.
224 A.D. 487, 231 N.Y.S. 435 (1st Dep't 1928)................................................ 20

Caruso v. Ward
146 A.D.2d 22 (1st Dep't 1989)..................................................................... 20

John Doris, Inc. v. Solomon R. Guggenheim Found.
209 A.D.2d 380 (N.Y. 1994)......................................................................... 20

## STATUTES

Family and Medical Leave Act (FMLA) 29 U.S.C. 2617........................3, 11, 13, 14, 21

## MISCELLANEOUS

S. Rep. No. 3, 103d Cong., 1st Sess. (1993)....................................................... 14

Black's Law Dictionary 1598 (6th ed. 1990)....................................................... 9

## STATEMENT OF FACTS

On or about March 14, 2005, Plaintiff Ralph Herrera and Defendant Katz Communications, Inc. (hereinafter, "Katz") entered into an employment contract (hereinafter, "Employment Contract"). (See, Employment Contract attached hereto as Exhibit A). The Employment Contract, by its explicit terms, superseded any prior written or oral agreements. The Employment Contract explicitly stated:

> This Agreement contains the entire agreement of the parties relating to the subject matter hereof. **This Agreement supersedes any prior written or oral agreements** or understandings between the parties relating to the subject matter hereof. (Employment Contract, Exhibit A, p. 8, emphasis added)

The Employment Contract contains an arbitration provision (hereinafter, "Arbitration Provision"). The Arbitration Provision states, in part:

> The Company will pay the actual costs of arbitration **excluding attorney's fees. Each party will pay its own attorneys fees** and other costs incurred by their respective employees. (Employment Contract, Exhibit A, p. 7, emphasis added)

The term of employment set forth in the Employment Contract was March 7, 2005 through June 30, 2007. The employment contract entitled Plaintiff Ralph Herrera to an annual base salary of $94,760.00.00, with eligibility for annual raises, sales commissions, employment benefits, and other expenses. (See, Employment Contract, Exhibit A, p. 1)

On or about March 9, 2006, Plaintiff Ralph Herrera broke his ankle and took four days off from work to recover and visit with doctors. During medical examinations with an orthopedic surgeon, a doctor determined that plaintiff Ralph Herrera had a herniated disk. On or about March 16, 2006, Dr. Plas T. James issued Plaintiff Ralph Herrera a no-work note for four weeks. On or about March 17, 2006, direct supervisor Peter Kakoyiannis told Plaintiff Ralph

1

Herrera to think about it and decide how he wanted to proceed. (See, Verified Complaint, attached hereto as Exhibit E, at 19, 24, 25)

On or about March 20, 2006 the President of Univision Radio National Sales Laura Hagan and Plaintiff Ralph Herrera's direct supervisor Peter Kakoyiannis called him in and Laura Hagan stated, "in this business you cannot go out on disability unless you are bleeding to death" and to "suck it up" and schedule physical therapy around the day and continue to work. (See, Verified Complaint, Exhibit E, at 26, 27)

On or about March 21, 2006, the Human Resources department advised Plaintiff Ralph Herrera to follow his doctor's orders immediately and to go home. On or about March 27, 2006, Plaintiff Ralph Herrera began his medical leave. (See, Verified Complaint, Exhibit E, at 29, 33)

On or about June 23, 2006, Plaintiff Ralph Herrera was issued a note from his doctors that permitted a to return to work with certain restrictions, effective June 26, 2006. On or about June 28, 2006, Plaintiff Ralph Herrera returned to work on a schedule of four hours per day. On or about June 28, 2006, Peter Kakoyiannis called Plaintiff Ralph Herrera to inform him that he and Laura Hagan were not happy with his work. On or about July 5, 2006 Plaintiff Ralph Herrera received a call from Peter Kakoyiannis and was informed that Univision National Radio Sales, he and Laura Hagan were not happy with Plaintiff Ralph Herrera's work and said, "maybe it would be a good idea to separate quietly." On or about July 7, 2006 Plaintiff Ralph Herrera returned to full-time work. (See, Verified Complaint, Exhibit E, at 39, 44, 47, 48)

Shortly thereafter, on or about July 13, 2006, Plaintiff Ralph Herrera received a call from Peter Kakoyiannis and was told he was being terminated and had to leave immediately, with nearly one year remaining in the explicit term of the Employment Contract. (See, Verified Complaint, Exhibit E, at 51)

2

Defendant Katz terminated Plaintiff Ralph Herrera. On or about September 28, 2007, Plaintiff Ralph Herrera commenced the present action alleging violations of the Family and Medical Leave Act (FMLA), breach of contract and a claim for punitive damages.

On or about November 8, 2007, defense counsel contacted plaintiff's counsel and threatened sanctions, costs and fees if plaintiff's counsel would not accede to defense counsel's demand to arbitrate the present action. (See, Correspondence from Defense counsel dated November 8, 2007 attached hereto as Exhibit C). Defense counsel argued that a prior, different arbitration agreement allegedly signed by Plaintiff Ralph Herrera as a condition of employment was the controlling agreement (hereinafter, "Arbitration Agreement"). At that time, defense counsel was in possession of the subsequent Employment Contract that explicitly stated that it "supersedes any prior written or oral agreements." (hereinafter, the "Superseding Clause"). (Employment Contract, Exhibit A, p. 8).

On or about November 12, 2007, plaintiff's counsel requested that defense counsel reconsider its baseless threat of sanctions, fees and costs as, among other reasons, the prior Arbitration Agreement did not contain any counter-party, Defendant Katz or otherwise, and advised that a motion to compel arbitration would be met with opposition. (See, Correspondence from Plaintiff's counsel, dated November 12, 2007 attached hereto as Exhibit D)

On or about November 19, 2007, Defendant Katz brought the present motion to enforce the prior Arbitration Agreement despite the clear, unambiguous and unequivocal language of the subsequent Employment Contract that it "supersedes any prior written or oral agreements." (Employment Contract, Exhibit A, p. 8). All but one isolated paragraph of Defendant's motion is rendered moot as a result of the above-quoted provision.

## INTRODUCTION

Defendant's motion is based upon a deliberate deceit on the Court. The vast majority of the Defendant's moving papers are devoted to the language of the prior Arbitration Agreement, when pursuant to the explicit language of the subsequent Employment Contract, the prior Arbitration Agreement has been superseded and is thus a nullity. The subsequent Employment Contract states: "This Agreement supersedes any prior written or oral agreements or understandings between the parties relating to the subject matter hereof." (See, Employment Contract, Exhibit A, p. 8). The clause speaks for itself. In addition, the prior Arbitration Agreement is not a contract between Plaintiff and Defendant, as it is allegedly signed by Plaintiff but not by any counter-party, Defendant Katz or otherwise.

As the prior Arbitration Agreement is rendered utterly irrelevant, the controlling document is the Arbitration Provision of the Employment Contract. The Arbitration Provision of the Employment Contract is unlawful as it unambiguously precludes an award of attorneys' fees to a prevailing plaintiff at arbitration. The Arbitration Provision provides: "The Company will pay the actual costs of arbitration excluding attorney's fees. Each party will pay its own attorneys fees and other costs incurred by their respective employees." (See, Employment Contract, Exhibit A, p. 7). The Defendant seeks to convince this Court that the clear and definite language of the Arbitration Provision that provides that each party must pay its own attorneys fees somehow affords discretion to an arbitrator to nevertheless award attorneys' fees to a prevailing plaintiff. (See, Defendant's Motion at 11). Defendant's argument defies the plain meaning of the words. An arbitration agreement may select a forum upon which disputes will be settled, but cannot waive a plaintiff's substantive legal rights and remedies. The entire Arbitration Provision is unenforceable as it deprives Plaintiff of statutorily mandated rights.

4

It would violate public policy and contravene the will of Congress if the Arbitration Provision is redrafted *ex post facto* to provide Plaintiff with the substantive remedies required by law. Defendant Katz is a sophisticated, resourceful employer that attempted to assault its employees' rights under anti-discrimination statutes. Redrafting the Arbitration Provision and thereby rescuing Defendant from its own ill-advised actions, will simply encourage sophisticated employers to overreach and deprive less sophisticated employees of basic rights, as the only penalty will be that a court may redraft the arbitration provision to provide the rights that should have been provided from the start. Plaintiffs will be deterred from pursuing legitimate claims of discrimination where an employer unlawfully drafts an arbitration provision in an attempt to make the process appear burdensome, onerous and expensive. By deterring plaintiffs from pursuing claims of discrimination, the broad, societal public policy goals of anti-discrimination statutes that Congress has deemed as the highest priority will be stymied.

This Court should not rescue Defendant from its errors, but uphold the legislative intent and purpose behind anti-discrimination statutes and refuse to redraft an unlawful arbitration provision that waives Plaintiff's substantive legal remedies.

## ARGUMENT

## POINT I:   THE PRIOR ARBITRATION AGREEMENT IS NULL AND VOID

The prior Arbitration Agreement dated March 22, 2004 is null and void as superseded by the subsequent Employment Contract effective March 7, 2005, executed by Plaintiff Ralph Herrera on or about March 14, 2005 and by Defendant Katz on or about April, 28, 2005. Both the explicit language of Superseding Clause of the subsequent Employment Contract and the subsequent Arbitration Provision therein nullify the prior Arbitration Agreement. Further, the

Arbitration Agreement is not an agreement between the Plaintiff and Defendant and is therefore irrelevant to any dispute between the present litigants.

## A. THE PRIOR ARBITRATION AGREEMENT IS EXPLICITLY SUPERCEDED BY THE SUBSEQUENT EMPLOYMENT CONTRACT

The clear, unambiguous and unequivocal language of the Employment Contract explicitly states that the Employment Contract supersedes any prior written or oral agreements. The Employment Contract provides in relevant part:

> This Agreement contains the entire agreement of the parties relating to the subject matter hereof. **This Agreement supersedes any prior written or oral agreements** or understandings between the parties relating to the subject matter hereof. (Employment Contract, Exhibit A, p. 8, emphasis added)

Defendant Katz alleged that Plaintiff Ralph Herrera previously signed the prior Arbitration Agreement as a condition of his employment with Defendant Katz on or about March 22, 2004. (See, Defendant's Motion at 2). Thereafter, Defendant Katz affirmatively alleged that on or about March 7, 2005, Plaintiff Ralph Herrera entered into an Employment Contract with Defendant Katz that contained the Superseding Clause. (See, Defendant's Motion at 3).

The Superseding Clause clearly demonstrates that the controlling document with regard to the arbitration of disputes between the parties is the Employment Contract. The prior Arbitration Agreement is rendered an utterly irrelevant nullity.

Further, it is a basic principle of New York contract law that "a subsequent contract regarding the same subject matter supersedes the prior contract." Independent Energy Corp. v. Trigen Energy Corp., 944 F.Supp. 1184, 1195 (S.D.N.Y. 1996)

6

Nonetheless, in support of its motion to compel arbitration, Defendant Katz produced the Arbitration Agreement, and argued that it is the controlling document. The only logical conclusions are that defense counsel either intentionally failed to mention the above-quoted Superseding Clause with the hope that neither opposing counsel nor the Court would read the brief Employment Contract, or that defense counsel simply did not read the brief Employment Contract before wasting the time and resources of all parties and the Court in baseless motion practice.

## B. DEFENDANT IS NOT A PARTY TO THE PRIOR ARBITRATION AGREEMENT

The Arbitration Agreement that Defendant alleged to be the controlling document to resolve the case at bar is simply not a contract or agreement between Plaintiff Ralph Herrera and Defendant Katz. The Arbitration Agreement is allegedly signed by Plaintiff Ralph Herrera, but is not signed by any counter-party, Defendant Katz or otherwise, and it is impossible to determine who the counter-party might be. (See, Arbitration Agreement, Exhibit B, see generally). The counter-party is not, however, the Defendant in the matter at bar.

In Defendant's moving papers, Defendant alleged that the Arbitration Agreement constitutes the controlling document, but did not allege that the Arbitration Agreement was a contract between Plaintiff and Defendant. On or about November 12, 2007, in an attempt to resolve this matter and avoid motion practice, Plaintiff advised Defendant that the Arbitration Agreement was not a contract between Plaintiff and Defendant as the Arbitration was signed by Plaintiff Ralph Herrera, but not by any counter-party, Defendant Katz or otherwise. (See, Correspondence from Plaintiff's counsel, Exhibit D). The prior Arbitration Agreement simply provides no guidance as to who the counter-party might be as the only identified counter-entity

7

in the prior Arbitration Agreement is the "Company." (See, Arbitration Agreement, Exhibit B, see generally).

In light of Defendant counsel's prior knowledge of Plaintiff counsel's position with regard to the Arbitration Agreement, it is particularly interesting that Defendant affirmatively omitted any allegation that the Arbitration Agreement was a contract between Plaintiff and Defendant.

Although it is certainly not conceded, even if the Arbitration Agreement were a contract between Plaintiff and Defendant, it was superseded by the subsequent Employment Contract on account of both the Superseding Clause as well as the new Arbitration Provision.   (See, Employment Contract, Exhibit A, p. 7, 8).

**POINT II:     THE ARBITRATION PROVISION OF THE SUBSEQUENT EMPLOYMENT CONTRACT IS CLEAR AND UNAMBIGUOUS IN ITS WAIVER OF A PREVAILING PLAINTIFF'S ENTITLEMENT TO ATTORNEYS' FEES**

The Arbitration Provision of the subsequent Employment Contract explicitly waives Plaintiff's right to recovery of attorneys' fees at arbitration, and is thus void as against public policy.   The Arbitration Provision of the Employment Contract states:

> The Company *will* pay the actual costs of arbitration **excluding attorney's fees. Each party *will* pay its own attorneys fees** and other costs incurred by their respective employees.  (Employment Contract, Exhibit A, p. 7, emphasis added)

Defendant alleged that the Arbitration Provision does not foreclose the availability of attorneys' fees as it is ambiguous in its "silen[ce] as to whether either party may recover attorneys' fees." (See, Defendant's Motion at 11).  If this Arbitration Provision is "silent" as to

8

which party will pay a plaintiff's attorneys' fees, it is the loudest silence on record. Two specific sentences demand that each party "will" pay its own attorneys fees, with no exceptions or carve-outs whatsoever. Defendant's argument is intuitively and legally dishonest as it completely ignores the plain language of the Arbitration Provision and does not cite any legal authority in support of this proposition.

Black's Law Dictionary defines "will" as a "verb commonly having the mandatory sense of "shall" or "must". It is a word of **certainty**, while the word 'may' is one of speculation and uncertainty." Black's Law Dictionary 1598 (6th ed. 1990)(emphasis added).

Similarly, Black's Law Dictionary defines the word "shall" as **"imperative or mandatory**. In common or ordinary parlance, and in its ordinary signification, the term 'shall' is **a word of command**, and one which has always or which must be given **a compulsory meaning, as denoting obligation**. The word in ordinary usage means "must" and **is inconsistent with a concept of discretion**." Id. at 1375(emphasis added).

The language of the Arbitration Provision is not vague or ambiguous, and does not leave any room for interpretation. The Arbitration Provision absolutely requires, without exception, that each party will, shall and must pay its own attorneys' fees.

Arbitration provisions with requirements that parties pay their own attorneys' fees have consistently been held to unambiguously preclude recovery of attorneys' fees at arbitration. See, DeGaetano v. Smith Barney, Inc, 983 F.Supp. 459 (S.D.N.Y. 1997)(arbitration provision requiring that "each side shall pay its own legal fees and expenses" held invalid as it "waived [plaintiff's] right to obtain attorney's fees" at arbitration); Graham Oil Co. v. Arco Products Co., 43 F.3d 1244 (9th Cir. 1994)(arbitration provision stating "[e]ach party shall pay its own costs and expenses, including attorneys' fees related to such arbitration" held to "expressly forfeit

[plaintiff's] statutorily-mandated right to recover reasonable attorney's fees); McCaskill v. SCI Management Corp., 285 F.3d 623 (7th Cir. 2002)(arbitration provision stating "[e]ach party may retain legal counsel and shall pay its own costs and attorneys fees, regardless of the outcome at arbitration" held to preclude recovery of attorneys' fees at arbitration).

Defendant's identical argument was specifically addressed by the Seventh Circuit in McCaskill where an arbitration agreement specified that "[e]ach party...shall pay its own costs and attorneys fees, regardless of the outcome at arbitration." The Seventh Circuit stated:

> According to SCI, the provision regulates only what McCaskill is responsible for paying, not what she may be awarded, and thus it is possible for an arbitrator to award her attorneys' fees consistent with the arbitration agreement, as long as she used that award to pay her attorneys. **That defies the plain meaning of the words.** SCI has identified no other context in which a court would hold that a provision requiring a person to pay her own attorneys' fees actually means the opposing party may be required to pay her fees to her, and then she must pay her own attorney. **The provision obviously means that neither party can be required to pay the attorney's fees of the other party,** either directly or through the straw-man approach advocated by SCI.

Id., 285 F.3d at 626 (emphasis added).

In the matter at bar, the Arbitration Provision unambiguously states that, "The Company will pay the actual costs of arbitration excluding attorney's fees. Each party will pay its own attorneys fees..." There is no ambiguity in the Arbitration Provision from which to conclude that an arbitrator may award attorneys' fees. As in McCaskill, such an interpretation "defies the plain meaning of the words." Id. at 626. The Arbitration Provision is unambiguous in its waiver of a prevailing plaintiff's entitlement to attorneys' fees.

**POINT III:   THE ENTIRE ARBITRATION PROVISION OF THE EMPLOYMENT CONRACT IS UNENFORCABLE AS AGAINST PUBLIC POLICY AS IT DEPRIVES A PLAINTIFF OF SUBSTANTIVE LEGAL REMEDIES**

10

It is well established that an arbitration agreement cannot deprive an employee of substantive rights and/or remedies under the law.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614 (1985)(stating "contractual clauses purporting to mandate arbitration of statutory claims as a condition of employment are enforceable only to the extent that the arbitration preserves the substantive protections and remedies afforded by the statute.")

An arbitration agreement cannot waive a prevailing plaintiff's entitlement to attorneys' fees where such a remedy is statutorily mandated.  See, DeGaetano v. Smith Barney, Inc, 983 F.Supp. at 469 (S.D.N.Y. 1997)(stating the "Arbitration Policy, to the extent that it waived [plaintiff's] right to obtain attorney's fees as a prevailing Title VII plaintiff, is void as against public policy."); Gruber v. Louis Hornick & Co., Inc., 2003 WL 21222541 (S.D.N.Y. 2003)(stating "To the extent an arbitration agreement waives a plaintiff's right to attorney's fees, the agreement is invalid"); Gambardella v. Pentec, Inc., 218 F.Supp 237 (D.Conn. 2002)(stating in a Title VII action that "arbitration agreements that provide that each party shall bear their own attorneys' fees are void as against public policy").

Pursuant to the Family and Medical Leave Act (FMLA), the Court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. 2617.  The unambiguous Arbitration Provision however explicitly precludes an award of attorneys' fees and costs such as reasonable expert witness fees to a prevailing plaintiff and, therefore, waives Plaintiff's substantive remedy under the FMLA.

Plaintiff is aware that there is disagreement amongst the Courts as to whether an unenforceable provision of an arbitration agreement invalidates the entire arbitration provision or

11

whether the unenforceable provisions should merely be severed and the remainder of the agreement enforced.  See, Perez v. Globe Airport Security Services, 253 F.3d 1280 (11th Cir. 2001)(denial of motion to compel arbitration where an arbitration agreement containing a provision that precluded recovery of attorneys' fees for a prevailing Title VII plaintiff rendered the entire arbitration agreement unenforceable); McCaskill, 285 F.3d 623(denial of motion to compel arbitration in Title VII action where "each party shall pay its own attorneys' fees, regardless of the outcome of the arbitration" rendered the entire agreement unenforceable); Graham Oil Co. v. Arco Products Co., 43 F.3d at 1248(where arbitration agreement precluded recovery of attorneys' fees, in a PMPA action where attorneys' fees are a statutory remedy, the Court severed entire Arbitration Provision, not merely the unenforceable attorneys' fee provision); Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir. 1998)(in Title VII action, declined to sever portion of Arbitration Provision that precluded arbitrator from awarding damages other than for breach of contract, entire Arbitration Provision held unenforceable); Popovich v. McDonald's Corporation, 189 F.Supp. 2d 772 (N.D.Ill. 2002)(holding entire arbitration agreement requiring plaintiff to pay exorbitant arbitration fees unenforceable because the court "will not remake the parties agreement to include a provision requiring arbitration if [defendant] agrees to pay expenses"); Hooters v. Phillips, 39 F.Supp.2d 582 (D.S.C. 1998)(denial of a motion to compel arbitration where arbitration agreement denied Title VII plaintiff substantive rights including entitlement to attorneys' fees); See also, DeGaetano, 983 F.Supp. at 460 (severing provision of arbitration agreement that precluded recovery of attorneys' fees); Gambardella v. Pentec, Inc., 2003 WL 22119182 (D.Conn. 2003)(holding entire arbitration agreement unenforceable *suasponte* in prior decision, later severing provision that precluded recovery of attorneys' fees on motion for reconsideration).

A decision that the Court should sever the unlawful portions of an arbitration agreement and enforce of the remainder of an agreement is a direct affront to the legislative intent and public policy concerns that underlie anti-discrimination statutes (including but not limited to the FMLA) that provide prevailing plaintiffs with an entitlement to attorneys' fees. This is not merely one simple, offending clause that can easily be overlooked, but an attempt to effectively devalue a prevailing plaintiff's claim by fifty percent or more of its value when one takes into account the fees and expenses necessary to prosecute an action. Attorneys typically represent clients in cases such as the one at bar on some type of contingency or modified-contingency basis that generally provides for a one-third fee, in addition to expenses. Expenses, such as expert witness fees, can quickly reach into the many thousands of dollars. Cumulatively, between the contingency fee and expenses associated with litigation, attorneys' fees can easily amount to fifty percent of the recovery, sometimes far more. An attempt to unlawfully reduce the value of a plaintiff's action by fifty percent, as well as reduce defendant's potential monetary exposure, is not a "minor" overreach by any reasonable calculation.

The term sever itself is misleading. The more accurate question is whether the Court should redraft the arbitration provision to rescue the Defendant from its own ill-advised assault upon the federal anti-discrimination statutes.

As succinctly stated in DeGaetano, "The Supreme Court has emphasized on numerous occasions that an individual plaintiff pursuing claims under the civil rights laws...is "cast...in the role of 'private attorney general,' vindicating a policy that Congress considered of the highest priority." Id. at 465(citing and quoting numerous Supreme Court cases). The United States Supreme Court has endorsed the significance of attorneys' fee provisions to "ensure effective access to the judicial process for persons with civil rights grievances." Hensley v. Eckhart, 461

13

U.S. 424 (1983). The importance of a plaintiff's right to attorneys' fees cannot be ignored, as it is a "critical component of Congress's comprehensive statutory scheme for uncovering, redressing and deterring unlawful employment discrimination in the American workplace." DeGaetano, 459 F.Supp. at 465. Attorneys' fees provisions are "the chosen instrument by Congress" for effectuating a plaintiff's vital interests. Id. at 465. Importantly, the benefits of attorneys' fee provisions "serve broader policy goals" where "Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone"; rather, "the damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future." Id. at 465(citing City of Riverside v. Rivera, 477 U.S. 561, 106 S.C. 2686 (1986)).

Congress enacted the FMLA, among the many reasons, "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity" and to "minimize the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for medical reasons (including maternity-related disability) and for compelling family reasons, on a gender neutral basis." 29 U.S.C. 2601. In order to effectuate enforcement of the FMLA, Congress provided that "in addition to any judgment awarded to the plaintiff, the court shall allow reasonable attorneys fees...be paid by the defendant" and that "A court has no discretion to deny fees to a prevailing plaintiff; its discretion extends only to the amount allowed." S. Rep. No. 3, 103d Cong., 1ˢᵗ Sess. (1993). The entitlement to attorneys' fees under the FLMA was provided as added incentive to individual employees to enforce their rights in court and deter discrimination on a broad, societal scope. See, DeGaetano, 459 F.Supp. at 465(stating "an attorney's fee award [is] one of the principal remedies afforded by Title VII, and one of the chief

statutory mechanisms designed to effectuate Congress's policy goals of enforcement and deterrence.")

A decision to redraft the Arbitration Provision so it is no longer void as against public policy and grant Defendant Katz's motion to compel arbitration would reward a knowledgeable and fully resourced employer's blatant attempt to exploit unknowledgeable employees, circumvent the will of Congress and ignore the important public policy concerns behind anti-discrimination laws. Such a decision would lead to an abundance of unacceptable consequences, as demonstrated below.

First, employers will be provided with an overwhelming incentive to engage in an assault on the statutory rights of employees by including unlawful provisions in arbitration agreements, such as, but not limited to, a waiver of entitlement to attorneys' fees as in the case at bar. In a best-case scenario for the employer, an unknowledgeable employee will determine that the pursuit of a viable discrimination claim is simply too expensive, and forgo such claims even before the initial step of seeking legal counsel. In a worst-case scenario for the employer, the court will simply redraft the arbitration agreement to provide the employee with the rights and remedies available under law, which the employer ought to have provided from the outset. Such a scenario strongly urges employers to attempt to overreach and deprive employees of statutory rights, as it potentially insulates the employer from any and all liability, and does not impose any penalty for the attempt.

Second, plaintiffs will be deterred from the pursuit of their individual statutory rights under anti-discrimination laws. As stated above, anti-discrimination laws provide entitlement to attorneys' fees as a substantive remedy in order to encourage plaintiff's to enforce their statutory rights. Individual plaintiffs may decline the opportunity to invoke their statutory right to be free

15

from unlawful discrimination, where it appears from an arbitration agreement that enforcement will be expensive and unduly burdensome. Any holding that potentially discourages the prosecution of discrimination claims is in direct contravention to the rationale for enactment of anti-discrimination statutes and the plaintiffs' entitlement to attorneys' fees in such actions.

Third, if plaintiffs are deterred from invoking their individual statutory rights, it will be a complete affront to the broad, societal public policy goals of anti-discrimination statutes. It is clear that attorneys' fee provisions "serve broader policy goals" because "Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone" but that "the damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future" and such a plaintiff is "cast...in the role of 'private attorney general,'" vindicating a policy that Congress considered of the highest priority." DeGaetano, 459 F.Supp. at 465(citing City of Riverside v. Rivera, 477 U.S. 561, 106 S.C. 2686 (1986)). Any holding that results in the deterrence of the pursuit of individual discrimination claims is offensive not only to the individual claims, but to the broad, societal public policy goals of anti-discrimination statutes.

Fourth, plaintiffs will be forced to undergo an onerous process merely to vindicate their rights under anti-discrimination statutes. Anti-discrimination statutes are deemed to be of the highest public policy importance to society at large and it is specifically for that reason that Congress provided entitlement to attorneys' fees to prevailing plaintiffs. See, DeGaetano, 459 F.Supp. at 465. Attorneys' fees provisions facilitate a plaintiff's ability to pursue an anti-discrimination claim. A decision that redrafts the Arbitration Provision so that it does not offend public policy will require that plaintiffs jump through a series hoops merely to vindicate statutory rights. Employees will be forced to endure the unnecessary burden of not only arbitration, but

also litigation over the unlawfulness of all offending provisions. Congress clearly intended to unburden the process by which plaintiffs enforce anti-discrimination statutes. A holding to redraft rejects Congress' intent and burdens plaintiffs that seek enforcement of their rights under anti-discrimination statutes.

Fifth, courts will be burdened with increased litigation. A holding to redraft the Arbitration Provision, rather than invalidate the entire Arbitration Provision, will surely lead to an increase in costs and workload for the Courts. Employers will continue to overreach in an attempt to deprive employees of basic rights at arbitration, as there will be no penalty for doing so, while the potential payoff is avoidance of otherwise meritorious actions. Employees will be required to litigate over the lawfulness of each individual provision of arbitration provisions or if such provisions render the entire agreement unlawful. Such a holding would undermine the explicit basis for the Federal Arbitration Act, which was designed to decrease the workload and amount of litigation in the court system. See, Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834 (2001)(describing "breed[ing] litigation" as inconsistent with the basic purpose of the Act)

Sixth, sophisticated employers with prolific resources will be granted a massive shift in the balance of power over employees that are by-and-large less knowledgeable, less sophisticated, and less resourceful. For instance, Defendant in the case at bar does not constitute an innocent, unsophisticated actor that warrants rescue by the Court. The Defendant constitutes a sophisticated party that attempted a full-frontal assault upon federal anti-discrimination statutes. Employers must be accountable for such actions. Employers are already in a unique and powerful position over employees, and it is for that reason that employers have the capability to even deprive employees of rights. Defendant was the only party in a position to attempt such

17

a heist. The remedy for such conduct is not to redraft the Arbitration Provision so that it does not

violate public policy, but to hold accountable the party that due to its sophistication, knowledge

and resources, should have drafted a lawful, enforceable agreement from the outset, and declare

the Arbitration Provision void as against public policy

Though the Second Circuit has not ruled on this issue, the Eleventh Circuit in Perez,

refused to sever an attorneys' fee provision and enforce the remainder of the agreement based on

the argument presently set forth by Plaintiff, stating:

> If an employer could rely on the courts to sever an unlawful
> provision and compel the employee to arbitrate, the employer
> would have an incentive to include unlawful provisions in its
> arbitration agreements. Such provisions could deter an
> unknowledgeable employee from initiating arbitration, even if they
> would ultimately not be enforced. It would also add an expensive
> procedural step to prosecuting a claim; the employee would have
> to request a court to declare a provision unlawful and sever it
> before initiating arbitration. Including an unlawful provision would
> cost the employer little, particularly where, as here, the arbitration
> agreement provides the employee must bear the employer's court
> costs and attorneys' fees incurred defending the agreement if
> arbitration is challenged and the employer prevails. If the court
> were inclined to reform this agreement, it would be more
> appropriate to limit the causes of action covered and exclude
> claims under Title VII and other statutes that permit an award of
> fees and costs to the prevailing party.

Perez, 253 F.3d at 1287.

Plaintiff is aware that Courts have a preference to favor arbitration. However, it is also

strongly urged that, "Courts must not be timid in voiding agreements which tend to injure the

public good or contravene some established interest of society." DeGaetano, 459 F.Supp. at

465(quoting Thomas Jones Assocs. v. Jameson, 102 F.3d 60 (2d Cir. 1996)).

The Supreme Court has recognized the Congressional policy that marks the "elimination

of discrimination the highest priority." Hooters, 39 F.Supp.2d at 616(citing Gardner-Denver 415

U.S. 36 (1974)). The legislative purpose and intent behind the statutory right to attorneys' fees to a prevailing plaintiff under anti-discrimination laws is to effectuate broad, societal change through the pursuit of individual claims. A scheme that encourages employers to continually overreach and assault the statutory rights of employees has a deterrent effect on the enforcement of anti-discrimination laws, and is therefore an affront on the "highest priority" of public policy. The Court should refuse to redraft the unlawful Arbitration Provision and declare the entire Arbitration Provision void as against public policy.

**POINT IV: THE ARBITRATION PROVISION CANNOT BE REDRAFTED AS IT WOULD VIOLATE THE EXPLICIT TERMS OF THE EMPLOYMENT CONTRACT**

Plaintiff and Defendant have demonstrated a clear intent that the parties cannot modify the Employment Contract in any manner absent a signed writing. It is therefore not within the power or domain of the Court to reform or redraft the Arbitration Provision so that it does not violate public policy.

The Arbitration Provision, as presently constructed, is either void as against public policy or it is not. The Employment Contract explicitly provides that, "No modification or amendment to this Agreement shall be valid unless in writing and signed by or on behalf of the parties hereto." (See, Employment Contract, Exhibit A, p. 8)

The United States Supreme Court stated, "we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002). Similarly, "[T]he courts may not rewrite the agreement to relieve a sophisticated contracting party from terms that it later deems disadvantageous." John Doris, Inc. v. Solomon R.

19

Guggenheim Found., 209 A.D.2d 380, 381 (N.Y. 1994). It is well understood that contracts must be construed and enforced as written. See, Anthony v. Syracuse Univ, 224 A.D. 487, 231 N.Y.S. 435, 439 (1st Dep't 1928); Travelers Indem. Co. v. 28 E. 70th St. Constr. Co., 296 F.Supp.2d 476, 481 (S.D.N.Y. 2003). It is a "basic principle of contract interpretation that the intention of the parties as it existed at the time the contract was executed...must control rather than any subsequent intention tailored to complement an individual's posture once an agreement has gone sour." Caruso v. Ward, 146 A.D.2d 22, 31 (1st Dep't 1989). In the case at bar, a large, sophisticated organization prevails upon the Court to rescue it from its own blatant attempts to hijack the substantive rights and remedies provided by federal anti-discrimination statutes to employees that become victim to unlawful discrimination.

Plaintiff is aware that the Employment Contract also provides that:

> If any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be held invalid or unenforceable, such invalidity and unenforceability shall not affect the remaining provisions hereof or the application of such provisions to other persons or circumstances, all of which shall be enforced to the greatest extent permitted by law. (See, Employment Contract, Exhibit A, p. 8)

The foregoing contractual clause must be read as consistent with the contractual prohibition against modifications and amendments that are not signed by the Parties. The entire Arbitration Provision of the Employment Contract should be declared unenforceable and the balance of the contract enforced to the greatest extent permitted by law.

Plaintiff and Defendant explicitly agreed that the Employment Contract cannot be modified unless it is in writing and signed by or on behalf of the parties. As a result, the Court has the power to declare the Arbitration Provision unenforceable, but not to remake the Employment Contract in contravention of the intent of the contracting parties.

20

## CONCLUSION

It is clear the prior Arbitration Agreement is null and void as the subsequent Employment Contract explicitly supersedes it and the prior Arbitration Agreement is simply not a contract between the Plaintiff and Defendant. The Arbitration Provision of the subsequent Employment Contract unambiguously, and without exception, deprives Plaintiff of the right to recover attorneys' fees at arbitration.    Under the FMLA, a prevailing plaintiff is provided with the substantive right to recovery of attorneys' fees. The Arbitration Provision therefore deprives Plaintiff of substantive rights under anti-discrimination statutes, and is therefore unenforceable. Any attempt to redraft the Arbitration Provision would violate public policy, as it would provide sophisticated, knowledgeable, resourceful employers with incentive to continually overreach and assault the basic rights of less-sophisticated, less-knowledgeable, less-resourceful employees. If employers are not discouraged from depriving employees of their rights under anti-discrimination statutes, plaintiffs will be deterred from pursuing viable discrimination claims due to the perceived burdensome, onerous, and expensive process that will be required to vindicate their rights. As a result, the legislative intent that anti-discrimination statutes be effectuated on a broad, societal level through the enforcement of individual claims will be grossly ignored. A decision to redraft the Arbitration Provision so that it is not void as against public policy will increase, not decrease, the costs to all parties and the Courts, as employers will continue to include unlawful clauses, and plaintiffs will be required not only to arbitrate discrimination claims, but litigate over the actual terms of arbitration.

Dated: December 7, 2007                    MARK L. LUBELSKY & ASSOCIATES

21

New York, NY

Mark L. Lubelsky (MLL 7958)
Attorneys for Plaintiff Ralph Herrera
123 West 18th Street, 8th Floor
New York, NY 10011
(212) 242-7480