**EXHIBIT A**

JAN-30-2007 18:46   KATZ HUMAN RESOURCES   212 424 6110   P.02/10

# EMPLOYMENT AGREEMENT

3/7/05 — 6/30/07

This Employment Agreement is entered into and effective this 7th day of March, 2005 (the "Effective Date") between Katz Communications, Inc. (the "Company" or "Katz") and Ralph Herrera (the "Employee").

WHEREAS, the Company and the Employee desire to enter into an employment relationship under the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **TERM OF EMPLOYMENT.**

The Employee's term of employment starts on the Effective Date and ends on the close of business on 30th day of June, 2007 (the "Initial Term").

2. **TITLE AND DUTIES.**

The Employee's title is Sales Manager, Univision Radio Sales. The Employee will perform job duties that are usual and customary for this position, and will perform additional services and duties that the Company may from time to time designate that are consistent with the usual and customary duties of this position. The Employee will report to the VP/General Sales Manager of Univision Radio Sales. The Employee will devote his full working time and efforts to the business and affairs of the Company.

3. **COMPENSATION AND BENEFITS**

(a) Base Salary. The Company will pay the Employee an annual base salary of Ninety-Four Thousand Seven Hundred Sixty Dollars and No Cents ($94,760.00). The Employee will be eligible for annual raises commensurate with company policy, which policy may change at the Company's sole discretion. All payments of base salary will be made in installments according to the Company's regular payroll practice, prorated monthly or weekly where appropriate, and subject to any increases that are determined to be appropriate by the Board or the CEO of Katz.

(b) Sales Commission Override. During the Term of Employment, beginning with the calendar year 2005, Employee shall be entitled to participate in the Sales Commission Override Program established each year for Univision Radio. The criteria for said Sales Commission Override will be established by the CEO of Katz. Target Sales Commission Override for 2005 will be $23,690.00 subject to the achievement of the criteria established and achievement of individual goals and objectives as determined by the CEO of Katz. Sales Commission Override will be paid quarterly in arrears on May 15, August 15, November 30 and February 15.

(c) Employment Benefit Plans. The Employee will be entitled to participate in all pension, profit sharing, and other retirement plans, all incentive compensation plans, and all group health, hospitalization and disability or other insurance plans, paid vacation, sick leave and

JAN-30-2007  10:47           KATZ HUMAN RESOURCES                    212 424 6110    P.03/10

other employee welfare benefit plans in which other similarly situated employees of the Company may participate as stated in the employee guide.

(d) **Expenses.** The Company will pay or reimburse the Employee for all normal and reasonable travel and entertainment expenses incurred by the Employee in connection with the Employee's responsibilities to the Company upon submission of proper vouchers in accordance with the Company's expense reimbursement policy.

(e) **Signing Bonus.** As further consideration for entering into this Employment Agreement, Company shall pay a one-time lump sum cash bonus equal to $5,000.00, less appropriate withholding taxes, upon the signing of this Employment Agreement.

4.  **NONDISCLOSURE OF CONFIDENTIAL INFORMATION.**

During the course of the Employee's employment with the Company, the Company will provide the Employee with access to certain confidential information, trade secrets, and other matters which are of a confidential or proprietary nature, including but not limited to the Company's customer lists, contracts, representation agreements, pricing information, production and cost data, compensation and fee information, strategic business plans, budgets, financial statements, and other information the Company treats as confidential or proprietary (collectively the "Confidential Information"). The Company provides on an ongoing basis such Confidential Information as the Company deems necessary or desirable to aid the Employee in the performance of his duties. The Employee understands and acknowledges that such Confidential Information is confidential and proprietary, and agrees not to disclose such Confidential Information to anyone outside the Company except to the extent that (i) the Employee deems such disclosure or use reasonably necessary or appropriate in connection with performing his duties on behalf of the Company; (ii) the Employee is required by order of a court of competent jurisdiction (by subpoena or similar process) to disclose or discuss any Confidential Information, provided that in such case, the Employee shall promptly inform the Company of such event, shall cooperate with the Company in attempting to obtain a protective order or to otherwise restrict such disclosure, and shall only disclose Confidential Information to the minimum extent necessary to comply with any such court order; or (iii) such Confidential Information becomes generally known to and available for use in the industries in which the Company does business, other than as a result of any action or inaction by the Employee. The Employee further agrees that he will not during employment and/or at any time thereafter use such Confidential Information in competing, directly or indirectly, with the Company. At such time as the Employee shall cease to be employed by the Company, he will immediately turn over to the Company all Confidential Information, including papers, documents, writings, electronically stored information, other property, and all copies of them, provided to or created by him during the course of his employment with the Company. This nondisclosure covenant is binding on the Employee, as well as his heirs, successors, and legal representatives, and will survive the termination of this Agreement for any reason.

5.  **NONHIRE OF COMPANY EMPLOYEES.**

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the term of the Employee's employment with the Company and for a period of 90 days if terminated without cause, or for a period of twelve (12) months if terminated for any other

2

JAN-30-2007 18:47       KATZ HUMAN RESOURCES             212 424 6110    P.04/10

reason, the Employee will not, directly or indirectly, (i) hire any current or prospective employee of the Company, or any subsidiary or affiliate of the Company (including, without limitation, any current or prospective employee of the Company within the 6-month period preceding the Employee's last day of employment with the Company or within the 12-month period of this covenant) who worked, works, or has been offered employment by the Company; (ii) solicit or encourage any such employee to terminate their employment with the Company, or any subsidiary or affiliate of the Company; or (iii) solicit or encourage any such employee to accept employment with any business, operation, corporation, partnership, association, agency, or other person or entity with which the Employee may be associated. If, during the term of this non-hire covenant, the Employee learns that any such employee has accepted employment with any business, operation, corporation, partnership, association, agency, or other person or entity with which the Employee may be associated (other than the Company), the Employee will immediately send notice to the Company identifying the employee and certifying that the Employee did not breach any provision of this non-hire covenant.

6.   NON-COMPETITION.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the Employee's employment with the Company and for a period of six (6) months thereafter, regardless of the reason for termination of employment, the Employee will not, directly or indirectly, as an owner, director, principal, agent, officer, employee, partner, consultant, servant, or otherwise, carry on, operate, manage, control, or become involved in any manner with any business, operation, corporation, partnership, association, agency, or other person or entity which is in the same business as the Company, specifically a media representation firm, or enter into the employment of, perform services for, enter into any oral or written agreement for services, or give or accept an option for services, enter into the employment of, perform services for or grant or receive future rights of any kind to provide services to or from any person or entity engaged in any distribution of audio, video and/or data content, whether such distribution is in the form of analog, digital, cellular, broadband, streaming, "high definition" or otherwise, and whether such distribution is received via radio, television, cable, internet, satellite, wireless or otherwise, in any location in which the Company, or any subsidiary or affiliate of the Company, operates or has plans or has projected to operate during the Employee's employment with the Company, including any area within a 50-mile radius of any such location. The foregoing shall not prohibit the Employee from owning up to 5.0% of the outstanding stock of any publicly held company. Notwithstanding the foregoing, after the Employee's employment with the Company has terminated, upon receiving written permission by the Board, the Employee shall be permitted to engage in such competing activities that would otherwise be prohibited by this covenant if such activities are determined in the sole discretion of the Board in good faith to be immaterial to the operations of the Company, or any subsidiary or affiliate of the Company, in the location in question.

To further preserve the rights of the Company pursuant to the nondisclosure covenant discussed above, and for the consideration promised by the Company under this Agreement, during the term of the Employee's employment with the Company and for a period of twelve (12) months thereafter, regardless of the reason for termination of employment, the Employee will not, directly or indirectly, either for himself or for any other business, operation, corporation, partnership, association, agency, or other person or entity, call upon, compete for, solicit, divert, or take away, or attempt to divert or take away current or prospective customers

(including, without limitation, any customer with whom the Company, or any subsidiary or affiliate of the Company, (i) has an existing agreement or business relationship; (ii) has had an agreement or business relationship within the six-month period preceding the Employee's last day of employment with the Company; or (iii) has included as a prospect in its applicable pipeline) of the Company, or any subsidiary or affiliate of the Company.

The Company and the Employee agree that the restrictions contained in this noncompetition covenant are reasonable in scope and duration and are necessary to protect the Company's business interests and Confidential Information. If any provision of this noncompetition covenant as applied to any party or to any circumstance is adjudged by a court or arbitrator to be invalid or unenforceable, the same will in no way affect any other circumstance or the validity or enforceability of this Agreement. If any such provision, or any part thereof, is held to be unenforceable because of the scope, duration, or geographic area covered thereby, the parties agree that the court or arbitrator making such determination shall have the power to reduce the scope and/or duration and/or geographic area of such provision, and/or to delete specific words or phrases, and in its reduced form, such provision shall then be enforceable and shall be enforced. The parties agree and acknowledge that the breach of this noncompetition covenant will cause irreparable damage to the Company, and upon breach of any provision of this noncompetition covenant, the Company shall be entitled to injunctive relief, specific performance, or other equitable relief; provided, however, that this shall in no way limit any other remedies which the Company may have (including, without limitation, the right to seek monetary damages).

Should the Employee violate the provisions of this noncompetition covenant, then in addition to all other rights and remedies available to the Company at law or in equity, the duration of this covenant shall automatically be extended for the period of time from which the Employee began such violation until he permanently ceases such violation

7.  **TERMINATION.**

The Employee's employment with the Company may be terminated under the following circumstances:

(a)  Death. The Employee's employment with the Company shall terminate upon his death.

(b)  Disability. The Company may terminate the Employee's employment with the Company if, as a result of the Employee's incapacity due to physical or mental illness, the Employee is unable to perform his duties under this Agreement on a full-time basis for more than 90 days in any 12 month period, as determined by the Company.

(c)  Termination By The Company. The Company may also terminate his employment for Cause. A termination for Cause must be for one or more of the following reasons: (i) conduct by the Employee constituting a material act of willful misconduct in connection with the performance of his duties, including, without limitation, violation of the Company's policy on sexual harassment, misappropriation of funds or property of the Company or any of its affiliates other than the occasional, customary and de minimis use of Company property for personal purposes, or other willful misconduct as determined in the sole discretion of the Company; (ii) non-performance by the Employee of his duties hereunder (other than by

4

reason of the Employee's physical or mental illness, incapacity or disability) where such non-performance has continued for more than 10 days following written notice of such non-performance; (iii) the Employee's refusal or failure to follow lawful directives where such refusal or failure has continued for more than 30 days following written notice of such refusal or failure; (iv) a criminal or civil conviction of the Employee, a plea of nolo contendere by the Employee, or other conduct by the Employee that, as determined in the sole discretion of the Board, has resulted in, or would result in if he were retained in his position with the Company, material injury to the reputation of the Company, including, without limitation, conviction of fraud, theft, embezzlement, or a crime involving moral turpitude; (v) a breach by the Employee of any of the provisions of this Agreement; or (vi) a violation by the Employee of the Company's employment policies.

8.   **COMPENSATION UPON TERMINATION.**

(a)   Death. If the Employee's employment with the Company terminates by reason of his death, the Company will, within 90 days, pay in a lump sum amount to such person as the Employee shall designate in a notice filed with the Company or, if no such person is designated, to the Employee's estate, the Employee's accrued and unpaid base salary and prorated bonus, if any, and any payments to which the Employee's spouse, beneficiaries, or estate may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(b)   Disability. If the Employee's employment with the Company terminates by reason of his disability, the Company shall, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and prorated bonus, if any, and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(c)   Termination By The Company For Cause: If the Employee's employment with the Company is terminated by the Company for Cause, the Company will, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies).

(d)   Termination By The Company Without Cause. If the Employee's employment with the Company is terminated by the Company without Cause, the Company will, within 90 days, pay in a lump sum amount to the Employee his accrued and unpaid base salary and prorated bonus, if any, and any payments to which he may be entitled under any applicable employee benefit plan (according to the terms of such plans and policies). In addition, if the Employee signs a general release of claims in a form and manner satisfactory to the Company, the Company will, within 90 days, pay to the Employee a lump sum equal to the greater of (1) six months of the Employee's annual base salary; or (2) the amount equal to Employee's salary for the remainder of the Employment Period of the Agreement.

(e)   Effect Of Compliance With Compensation Upon Termination Provisions. Upon complying with Subparagraphs 8(a) through 8(d) above, as applicable, the Company will have no further obligations to the Employee except as otherwise expressly provided under this Agreement, provided that such compliance will not adversely affect or alter the Employee's rights under any employee benefit plan of the Company in which the Employee has a vested

interest, unless, otherwise provided in such employee benefit plan or any agreement or other instrument attendant thereto.

9. **PARTIES BENEFITED; ASSIGNMENTS.**

This Agreement shall be binding upon the Employee, his heirs and his personal representative or representatives, and upon the Company and its respective successors and assigns. Neither this Agreement nor any rights or obligations hereunder may be assigned by the Employee, other than by will or by the laws of descent and distribution.

10. **GOVERNING LAW.**

This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice of law or conflict provisions or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York and the Employee hereby expressly consents to the personal jurisdiction of the state and federal courts located in the State of New York for any lawsuit arising from or relating to this Agreement.

11. **DEFINITION OF COMPANY.**

As used in this Agreement, the term "Company" shall include Katz Communications, Inc., Clear Channel Communications, Inc., and any of its past, present and future divisions, operating companies, subsidiaries and affiliates.

12. **LITIGATION AND REGULATORY COOPERATION.**

During and after the Employee's employment, the Employee shall reasonably cooperate with the Company in the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of the Company which relate to events or occurrences that transpired while the Employee was employed by the Company; provided, however, that such cooperation shall not materially and adversely affect the Employee or expose the Employee to an increased probability of civil or criminal litigation. The Employee's cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of the Company at mutually convenient times. During and after the Employee's employment, the Employee also shall cooperate fully with the Company in connection with any investigation or review of any federal, state or local regulatory authority as any such investigation or review relates to events or occurrences that transpired while the Employee was employed by the Company. The Company will pay the Employee on an hourly basis (to be derived from his base salary) for requested litigation and regulatory cooperation that occurs after his termination of employment, and reimburse the Employee for all costs and expenses incurred in connection with his performance under this paragraph, including, but not limited to, reasonable attorneys' fees and costs.

13. **INDEMNIFICATION AND INSURANCE; LEGAL EXPENSES.**

The Company shall indemnify the Employee to the fullest extent permitted by law, in effect at the time of the subject act or omission, and shall advance to the Employee reasonable attorneys' fees and expenses as such fees and expenses are incurred (subject to an undertaking

6

from the Employee to repay such advances if it shall be finally determined by a judicial decision which is not subject to further appeal that the Employee was not entitled to the reimbursement of such fees and expenses), and the Employee will be entitled to the protection of any insurance policies that the Company may elect to maintain generally for the benefit of its directors and officers against all costs, charges and expenses incurred or sustained by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a director, officer or employee of the Company or any of its subsidiaries, or his serving or having served any other enterprise as a director, officer or employee at the request of the Company (other than any disputes, claim or controversy arising under or relating to this Agreement). The Company covenants to maintain during the Employee's employment for the benefit of the Employee (in her capacity as an officer and director of the Company) Directors and Officers Insurance providing benefits to the Employee no less favorable, taken as a whole, than the benefits provided to the other similarly situated employees of the Company by the Directors and Officers Insurance maintained by the Company on the date hereof; provided, however, that the Board may elect to terminate Directors and Officers Insurance for all officers and directors, including the Employee, if the Board determines in good faith that such insurance is not available or is available only at unreasonable expense.

## 14. ARBITRATION.

The parties agree that any dispute, controversy or claim, whether based on contract, tort, statute, discrimination, retaliation, or otherwise, relating to, arising from or connected in any manner to this Agreement, or to the alleged breach of this Agreement, or arising out of or relating to Employee's employment or termination of employment, shall, upon timely written request of either party be submitted to and resolved by binding arbitration. The arbitration shall be conducted in New York, New York. The arbitration shall proceed in accordance with the National Rules for Resolution of Employment Disputes of the American Arbitration Association ("AAA") in effect at the time the claim or dispute arose, unless other rules are agreed upon by the parties. Unless otherwise agreed to by the parties in writing, the arbitration shall be conducted by one arbitrator who is a member of the AAA and who is selected pursuant to the methods set out in the National Rules for Resolution of Employment Disputes of the AAA. Any claims received after the applicable/relevant statute of limitations period has passed shall be deemed null and void. The award of the arbitrator shall be a reasoned award with findings of fact and conclusions of law. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, to enforce an arbitration award, and to vacate an arbitration award. However, in actions seeking to vacate an award, the standard of review to be applied by said court to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury. The Company will pay the actual costs of arbitration excluding attorney's fees. Each party will pay its own attorneys fees and other costs incurred by their respective attorneys.

## 15. REPRESENTATIONS AND WARRANTIES OF THE EMPLOYEE.

The Employee represents and warrants to the Company that he is under no contractual or other restriction which is inconsistent with the execution of this Agreement, the performance of his duties hereunder or the other rights of Company hereunder. The Employee also represents and warrants to the Company that he is under no physical or mental disability that would hinder the performance of his duties under this Agreement. The Employee represents and warrants to the Company that all terms and conditions of this Agreement shall be kept strictly confidential. 

7

16. **MISCELLANEOUS.**

This Agreement contains the entire agreement of the parties relating to the subject matter hereof. This Agreement supersedes any prior written or oral agreements or understandings between the parties relating to the subject matter hereof. No modification or amendment of this Agreement shall be valid unless in writing and signed by or on behalf of the parties hereto. The failure of a party to require performance of any provision of this Agreement shall in no manner affect the right of such party at a later time to enforce any provision of this Agreement. A waiver of the breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any subsequent breach of the same or any other term or condition. This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be held invalid or unenforceable, such invalidity and unenforceability shall not affect the remaining provisions hereof or the application of such provisions to other persons or circumstances, all of which shall be enforced to the greatest extent permitted by law. The headings in this Agreement are inserted for convenience of reference only and shall not be a part of or control or affect the meaning of any provision hereof.

**17. KEYMAN TERMINATION OPTION**

In the event Laura Hagan ("Hagan") is no longer employed at Katz, Employee may elect to terminate this Employment Agreement by providing notice to the Company within 90 days from the date Hagan's employment is terminated. If Employee makes such election and provides timely notice this Employment Agreement will terminate and the provisions of Paragraph 6 of this Agreement restricting the Employee from competing with the Company will be waived. Notwithstanding the foregoing, Employee will still be bound by the provisions of Paragraph 6 of this Agreement related to disclosure of Confidential Information.

IN WITNESS WHEREOF, the parties have duly executed and delivered this Agreement as of the date first written above.

DATE: 5-14-05

RALPH HERRERA

*/s/ Ralph Herrera/*

KATZ COMMUNICATIONS, INC.

DATE: 4-28-05

By: */s/ Stu Olds/*
STU OLDS
CHIEF EXECUTIVE OFFICER

**EXHIBIT B**

# ARBITRATION AGREEMENT

If you and the Company have a legal dispute (i.e., a dispute that could otherwise be brought in court) and we can't resolve it through our Open Door Policy, then we will use arbitration. Private arbitration is a more efficient, less expensive, and usually faster way to resolve disputes than through a traditional lawsuit in state or federal court. Accordingly, we require that new, non-union employees sign an agreement promising that all covered claims as defined in this Agreement, will be submitted to final and binding determination by an impartial arbitrator under the Employment Dispute Resolution Rules of the American Arbitration Association. The Arbitration Agreement becomes effective immediately upon hire or six weeks following the date of close if employee gains Clear Channel/Eller employment by means of a Company acquisition.

Employees are still protected by all applicable employment laws, and are merely agreeing to have certain employment-related claims decided by a private arbitrator rather than by a judge or jury. *Employees are not giving up any substantive rights to recover damages.* All non-union employees are deemed to have agreed to this Arbitration Agreement by accepting or continuing employment with this Company (including raises, promotions, bonuses, etc.).

Arbitration is the procedure used for the resolution of certain covered claims that may arise between the Company and employees. In the interest of a prompt and fair resolution of these claims, each employee is required to enter into this Agreement in exchange for employment with the Company and the Company's agreement to resolve these claims in the same manner.

Many of the disputes or claims that might possibly arise between the Company and an employee could be made the subject of a formal charge or complaint before a state or federal agency and/or the subject of a lawsuit in a state or federal court. In most such cases, either party (the Company or employee) could ultimately have the case tried before a jury upon request.

By this Arbitration Agreement, however, employees give up their right to sue the Company, and the Company is giving up its right to sue employees in court, as well as the right to trial by jury. Instead, the Company and employees hereby agree that any covered legal claim that either may have against or with the other will be submitted solely to a private, impartial arbitrator (a "private judge," so to speak) for a final and binding decision.

## Scope of the Arbitration Agreement

As a condition of employment with the Company, each employee hereby *waives his/her right to sue* the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement. In lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator. The arbitration shall be governed by the Employment

1

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

Dispute Resolution Rules of the American Arbitration Association. A copy of these rules is available for each employee to review.

Nothing in this Agreement is intended to prohibit the Employee from filing a claim or communicating with any governmental agency including the Equal Employment Opportunity Commission or the Department of Labor.

**Covered Claims:**

This Agreement covers the following potential claims:

1. Any dispute regarding the arbitrability of any such claim;

2. Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms;

3. Any claim that could be asserted by Employee or Company in any state or federal civil court or before an administrative agency, including without limitation, claims for breach of any contract or covenant, express or implied; assault, battery, invasion of privacy, defamation of character, infliction of emotional distress, tortious interference with contract, or other tort claims, including any claim that an employee was injured or damaged because of the negligence of the Company or any of its employees; and claims for unlawful discharge and/or for violation of any federal, state or local law, statute, ordinance or regulation, or common law;

4. Any claim for discrimination, including but not limited to discrimination because of sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual harassment, sexual orientation, mental or physical disability or medical condition or other characteristics protected by statute;

5. Any claim of retaliation or discrimination against the Company for opposing the violation of any federal, state or local statute or ordinance, including but not limited to the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, state workers' compensation law or any "whistleblower" law; and

6. Any claim for commissions, wages, bonuses or any other form of compensation.

**Claims Not Covered:**

This Agreement does not cover:

1. Claims for workers' compensation benefits.

2. Claims for unemployment compensation benefits.

2

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

3. Claims for benefits based upon the Company's employee welfare benefit plans, if the plan contains a final and binding appeal procedure for the resolution of disputes under the plan.

4. Claims for injunctive and/or other equitable relief, including but not limited to claims to enforce a covenant not to compete or for unfair competition or use or unauthorized disclosure of trade secrets or confidential information as contained in express written agreements.

5. Wage and hour disputes within the jurisdiction of any state Labor Commissioner.

6. Any claims not specifically listed as a "Covered Claim".

## Rules Governing the Arbitration

1. **Demand for Arbitration**

Any party to an Arbitration Agreement may initiate arbitration by serving upon the other party, by certified mail, a written notice containing a specific request to enter into arbitration. The written request shall identify and describe the nature of each claim asserted, the facts upon which each claim is based, and the relief or remedy sought. Written notice to the Employee will be sent to the most recent address contained in the Employee's personnel file. Written notice to the Company shall be sent to:

Clear Channel
General Counsel
200 East Basse
San Antonio, Texas 79209

Promptly after sending or receiving a written request to arbitrate a Covered Claim, the Company shall notify the American Arbitration Association ("AAA") that a demand for arbitration has been made and shall request that the AAA provide the parties with a list of arbitrators, as specified below. If, on the date that an arbitration demand is postmarked, any claim made in the demand would be barred by the applicable statute of limitations, that claim shall be deemed barred for purposes of arbitration.

An arbitration is also initiated by the receipt by AAA of an order from a court compelling arbitration. For purposes of the statute of limitations, the arbitration is deemed initiated on the date that the order compelling arbitration is issued by the court, or as otherwise ordered by the court.

2. **Selecting an Arbitrator**

The arbitration will be held under the auspices of AAA in or near the city in which the Employee or former Employee, who is party to the arbitration, is or was last employed by the Company. The parties may, however, agree on an alternative location

3

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

If the AAA does not have an available office with a hearing room in or near such city, the arbitration shall be conducted in a meeting room in a hotel in such city.

Except as otherwise provided in this Agreement, the arbitration shall be in accordance with the AAA's Employment Dispute Resolution Rules that are in effect at the time that the demand for arbitration is made. The arbitrator shall be either a retired judge or an experienced attorney licensed to practice law in the state in which the arbitration is to be convened.

Promptly upon receipt of notice from the Company that arbitration has been initiated, AAA will provide each party with an identical list of eleven (11) arbitrators from its panel of employment dispute arbitrators. (For purposes of arbitrator selection, all defendants, whether or not separately represented, shall be deemed one party). Within ten (10) calendar days from the postmark date on the AAA list, the parties or their representatives will meet or participate in a telephone conference to select an arbitrator. At such time, the parties shall alternately strike the name of an arbitrator on the list (the party initiating arbitration shall strike first) until only one name remains. This remaining name shall be the arbitrator. If a party refuses to timely participate in such a meeting or telephone conference, the other party may select an arbitrator from the list provided by AAA. If the arbitrator designated by this process declines or is unable to serve, the selection process shall be repeated with a new list of eleven (11) arbitrators from AAA.

3. **Hearing Date**

The arbitrator will promptly set a hearing date and time and will mail written notice to each of the parties at least sixty (60) days in advance of the hearing unless the parties otherwise agree or mutually waive notice.

4. **Depositions and Other Discovery**

Each party at their own expense shall have the right to take up to three (3) depositions unless the arbitrator, on a showing of good cause, approves additional depositions. Each party also shall have the right to require the production of relevant documents from the other party. Unresolved discovery disputes will be presented to the arbitrator for final resolution. All discovery shall be concluded within 45 days from the date the arbitrator is informed of his or her selection.

5. **Witnesses and Exhibits**

No later than fifteen (15) days before the arbitration, the parties will exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration. Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

4

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

6.  **Pre-Hearing Procedures**

The arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the arbitrator deems necessary. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

7.  **Briefs**

Either party, upon request at the close of the hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the arbitrator.

8.  **Filing Fee**

The Company will pay for the AAA filing fee and expenses of the arbitrator and AAA for administering the arbitration, except as expressly provided herein. The employee shall be responsible for their own attorney's fees, costs, and expenses, such as those incurred in discovery.

9.  **The Arbitration Hearing**

    A.  **Conduct of the Hearing**

    The arbitrator shall preside at the hearing and rule on the admission and exclusion of evidence and questions of procedure, and exercise other such powers as conferred by statute. Judicial rules relating to the order of proof, the conduct of the hearing and the presentation of admissibility of evidence will not be applicable. The arbitrator shall admit any relevant evidence if it is of the sort that reasonable persons are accustomed to relying upon in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law.

    B.  **The Law the Arbitrator will Apply**

    The arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the state law claim arose, or federal law of the circuit in which the federal law claim arose, or both, as applicable to the claim(s) asserted. The arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The arbitrator may not disregard or alter the Company's rules or policies unless the arbitrator determines that a rule or policy violated existing law at the time of the alleged violation. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

    Each party shall bear his or her own attorneys' fees and other costs no associated with the administration of the arbitration by the AAA. However, if a party is entitled to attorneys' fees under any federal, state or local statute or law, the arbitrato may award those fees pursuant to the governing law, at his or her discretion.

5

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

C.  Failure to Appear for Hearing

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

D.  Transcription of Hearing

Either party, at their expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

E.  Payment of Attorney and Witness Expenses

The parties shall pay its own attorneys' fees, witness fees, discovery costs and other expenses incurred for their own benefit, unless otherwise provided by contract or statute.

10. The Arbitration Award

The arbitrator shall render an award and opinion which is signed and dated and which decides all issues submitted as well as the legal principles supporting each part of the award. Unless the parties and arbitrator agree otherwise, the arbitrator's award shall issue no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The arbitrator may grant any remedy or relief, legal or equitable, that would have been available had the claim been asserted in court. The award shall include a brief statement of the factual and legal bases for the ruling.

A.  Reconsideration

Either party shall have the right, within twenty (20) days of issuance of the arbitrator's opinion, to file with the arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties. Each party shall bear his or her own costs and attorneys' fees relating to such a motion for reconsideration and written opinion of the arbitrator, unless the arbitrator orders otherwise.

B.  Enforcement

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement. Either party may bring an action to enforce an arbitration award. A party opposing enforcement of an award may also bring an action or counteraction if there are enforcement proceedings pending in any court of

6

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

competent jurisdiction to set aside the award. In such proceedings, the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

## Other Provisions

### Exclusive Forum

The Employee understands that this Agreement waives his or her right to a jury trial and waives the right to seek remedies in court.

### Construction of Agreement

Should any provision of this Agreement be found to be unenforceable, such portion will be severed from the Agreement and the remaining portions shall remain in full force and effect.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes (except for any arbitration agreement in connection with any pension or benefit plan). This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Voluntary Agreement

The employee's signature on the Arbitration Agreement certifies that the employee has carefully read this agreement and understands its terms. The employee acknowledges that all understandings and agreements between the Company and employee relating to the subjects covered in this agreement are contained in it, and that the employee has entered into this agreement voluntarily and not in reliance on any promises or representations by the Company other than those contained in this agreement itself.

SIGNATURE AND ACKNOWLEDGEMENT:

The employee further acknowledges that the employee has been given the opportunity to discuss this agreement with the employee's private attorney.

_____     3-22-04
Employee Signature                  Date

RALPH E. HERRERA

7

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

Printed Name                                              Division and Location

Form 4117
Arbitration Agreement
Sep Doc
7/11/01

8